[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 595 
James D. Devine, co-trustee of the Mary S. Sigourney Award Trust, a charitable trust, petitioned the trial court for instructions concerning the appointment of a successor co-trustee. The American Psychoanalytic Association (APA), Stephen K. Firestein, and Newell Fischer replied and opposed the petition on the basis that the underlying orders which had amended Mary Sigourney's testamentary trust and created the award trust were void because they and the Attorney General had not received notice of the proceedings. The Attorney General replied and indicated that he would not appear or take a position on the matter because both parties were adequately represented by counsel and there were no allegations of a diversion of charitable assets or that assets were not used for charitable purposes. The trial court granted the petition and instructed Devine to appoint a co-trustee in accordance with the trust's terms. APA, Firestein, and Fischer appeal and reiterate their position. We agree with appellants and reverse the order.
 BACKGROUND
Sigourney signed a will on October 11, 1988. She died on October 19. The will included a 13-page charitable trust for the purpose of funding an annual award "in recognition of contributions to the field of psychoanalysis." The trust appointed its trustees in paragraph 4 as follows: "The initial Trustees shall be JAMES D. DEVINE and BERNARD L. PACELLA, or such other individual who is at any time Treasurer of the [APA]. . . . If at any time the Treasurer of [APA] is unable or unwilling to serve as Co-Trustee, his *Page 596 
successor shall be selected by the Board of Directors of that Society or any successor to that Society. It is my intention that there shall at all times be two Trustees serving under this will."
On May 18, 1989, the executor of Sigourney's estate, Victoria Gibson, represented by Devine, filed a verified petition "to construe, amend, and conform decedent's will and testamentary trust in a manner consistent with her intent and with the Internal Revenue Code of 1986 and to qualify decedent's estate for the Federal Estate Tax Charitable deduction." The petition cited Probate Code section 17200 et seq. as authority.[1]
Gibson gave *Page 597 
no notice to the Attorney General or appellants.[2] By this time, Pacella, who was APA's treasurer, had decided not to run again for treasurer. Firestein and David A. Carlson were candidates for the post.[3]
The petition stated: "Decedent's will was prepared in circumstances which left certain provisions incomplete or inartfully stated as a reflection of decedent's intent. Decedent signed a preliminary draft of her will on October 11, 1988, because it stated the substance of her wishes and she was concerned about her health. Decedent intended to make certain clarifying changes to the trust provisions but died in San Francisco on October 19, 1988, eight days after signing her will, and without the opportunity to execute a new will incorporating the needed clarifying changes. Because the trust under decedent's will continues as a perpetual charitable trust, and at some time will be administered by persons who were not familiar with the decedent or her wishes, it is essential to the effective operation of the trust that these clarifying changes, all of which carry out decedent's intent, be incorporated into the trust under decedent's will, and in the order of distribution of this court which establishes the trust and supersedes the decedent's will."
The petition then requested the court to amend paragraphs 3, 4, 5, and 6 of the trust's provisions to read as proposed (a 20-page proposal). Most pertinent to this appeal is paragraph 4, the trustee-appointment clause. The petition requested that it be amended to read as follows:
"The initial Trustees shall be JAMES D. DEVINE and BERNARD L. PACELLA. . . . [¶] If at any time BERNARD L. PACELLA is unwilling or unable *Page 598 
by reason of death or incapacity to continue to serve as Co-Trustee, his successor shall be selected by the remaining Trustee from nominees presented by the governing bodies of the [APA] and the American Psychiatric Association, or any successor to those Associations and/or any reputable psychoanalytic society or institute selected by the Trustee(s) and/or any psychiatric departments of American Universities which have a medical school or as selected by the Trustee(s). . . . [¶] Because it is essential that the Trustees work co-operatively and in the spirit of my wishes, I wish the acting Co-Trustee to have the final decision with respect to the selection of a successor Co-Trustee. The acting Co-Trustee may request that additional nominees be submitted for consideration in selecting a successor Co-Trustee. Subsequent successor Trustees shall be chosen in a like manner. It is my intention that there shall at all times be two Trustees serving under this will, one a member of the legal profession and one a member of the [APA], or any successor to that Association."
On June 30, 1989, the court granted the petition and amended the trust provisions of the will as proposed. The order noted that "no person appearing to contest said petition."
On August 25, 1989, the court closed the estate, created the trust, and distributed the trust estate to Devine and Pacella.
On June 12, 1990, Devine and Pacella filed a verified petition to construe and amend the trust that was granted on July 13. On August 21, 1991, Devine and Pacella filed a verified petition to reform and amend the trust that was granted on September 27. In general, these modifications changed the procedures for selecting award recipients. As before, the petitioners gave no notice to anyone.
On December 3, 1999, Devine filed the instant verified petition for instructions. The petition informed that Pacella had resigned (effective upon the appointment of his successor), Devine wanted to appoint a successor in accordance with paragraph 4, but the APA had questioned the use of that procedure. Devine gave notice to the Attorney General and the APA.
Appellants responded and asked that the June 1989 order and the relevant provisions of the August 1989 order be declared void because (1) the orders were obtained by extrinsic fraud, (2) the orders were void on their face because Probate Code section 17203 required notice to successor trustees and, for purposes of the Internal Revenue Code revisions, "interested persons" were required to consent, (3) the orders were void on their face because section 17203 required notice to the Attorney General and Government Code section 12591 declared that the court was without jurisdiction to *Page 599 
modify the trust without the Attorney General's appearance, and (4) they were entitled to notice under federal and state constitutional principles of due process. And they asked that Fischer be appointed co-trustee ex officio in his capacity as APA's treasurer.
Devine then filed a declaration generally stating that Sigourney had a distrust of organizations, specifically the APA, and believed that organizations could not be counted on to carry out her wishes. He added that the APA had been a beneficiary in a previous will, but Sigourney had eliminated the bequest in a later will. In particular, Devine stated the following:
"On October 10, 1988, I met with Mrs. Sigourney to discuss the concept of an award trust. In our conversation she made it clear to me that while she wanted to provide an award for contributions to the field of psychoanalysis, she did not want the award to be in any way subject to the control of any particular organization. Mrs. Sigourney had become acquainted with Dr. Bernard Pacella who was then the treasurer of the [APA] and advised me that she was very impressed by him and that she wanted Dr. Pacella and me to be the initial trustees of the trust. [¶] Following our meeting on October 10, 1988, I prepared a rough draft of her Will for review by her on the following day. Given the time and circumstances, not all of the provisions were artfully prepared, phrases were omitted and sentences were not complete. Some of the provisions were my own attempt to fill in blanks to cover matters which we had not discussed including, among other things, the manner in which successor trustees were to be appointed. [¶] When I met with her on the following day, Mrs. Sigourney made it clear to me that she wanted Dr. Pacella to serve as co-trustee of the award trust in his individual capacity and not because he happened to be the treasurer of the APA. The reference in the draft Will to the treasurer of the APA was my attempt to deal with the possibility that Dr. Pacella might not be willing to act as trustee. She told me that she did not want the position of my co-trustee to be determined by whomever might be serving as the treasurer of the APA nor did she want the APA or any other organization to be able to control the appointment of a successor co-trustee. Because she wished to separate the award from the control of any organization, including the APA, we agreed that I would redraft those provisions as well as some others which we discussed on October 11. Nonetheless, because the draft covered the basic concepts which she desired for the award trust, Mrs. Sigourney insisted on signing the draft on October 11, 1988. Mrs. Sigourney told me that she would feel better if she had a will which at least contained the basic idea of an award and that we could make the needed changes later. Unfortunately, Mrs. Sigourney left Monterey for San Francisco the next day and died eight days later without returning to Monterey, and before I was about to redraft her Will to conform it to her wishes." *Page 600 
Devine added that he, Pacella, and Gibson had concurred in "formulating the changes which needed to be made and in particular those which related to the identity of my co-trustee and the selection of the successor to Dr. Pacella." He also declared that the purpose of Gibson's petition was to amend and modify the provisions of the trust "to conform to Mrs. Sigourney's intent regarding the manner in which . . . the trustees named and their successors selected." He added that "it did not occur to me that there was any reason to serve the petition on the APA or anyone associated with that organization. It was an oversight that the . . . Attorney General was not served with the petition."
Devine also filed points and authorities. He urged that Gibson's petition was justified to "eliminate the ambiguity in Paragraph Four of the trust and with reference to the identity and capacity of Mr. Devine's co-trustee and to eliminate the provision erroneously giving the APA the authority to appoint a successor trustee." Devine explained the ambiguity as follows:
"It was not clear whether Doctor Pacella was to be trustee in his individual capacity or only if he was the treasurer of the APA when Mrs. Sigourney died. The provision could have been interpreted to mean that the treasurer of the APA was to be the trustee only if Doctor Pacella was unable or unwilling to serve when Mrs. Sigourney died. Alternatively, it could have been interpreted to mean that whomever was treasurer of the APA when Mrs. Sigourney [died] was to be the initial trustee. That conflict could not be resolved from the document alone. In addition, the initial draft was silent on the subject of whether Doctor Pacella's service as the initial co-trustee with Mr. Devine was to end when he no longer held the position of treasurer of the APA. Because Doctor Pacella was, at the time of Mrs. Sigourney's death, the treasurer of the APA, there could be no question that he was to be the initial trustee with Mr. Devine."
In granting the petition, the trial court construed Gibson's petition as an executor's petition for instructions under Probate Code Appendix section 9611.[4] It then concluded that appellants and the Attorney General were not *Page 601 
entitled to statutory notice.[5] It added that it could have waived notice to the Attorney General under Probate Code Appendix section1220, subdivision (c), because Gibson's petition did not seek to modify the charitable purpose of the trust. It alternatively held that the Attorney General "retroactively waived" notice by filing its nonappearance in the instant proceeding. It added that appellants were not "interested persons" entitled to notice[6] and could not collaterally attack the underlying orders based on the lack of notice to the Attorney General because the issues did not relate to the Attorney General's supervisory duties over charitable trusts. And it rejected the extrinsic fraud argument on statute of limitations grounds and on the merits. It did not address appellants' constitutional argument.
 DISCUSSION
Appellants' dispositive contention is easily summarized: the trial court lacked fundamental jurisdiction to modify the trust because Gibson failed to give appellants notice of the 1989 proceedings.
Devine agrees with the proposition that, where notice is required to be given and is not given, the resultant order is void and may be collaterally attacked by anyone at any time. (Texas Co. v. Bank ofAmerica etc. Assn. (1935) 5 Cal.2d 35, 41.) The parties extensively debate, however, whether notice was required to be given to appellants.
Appellants rely on Government Code section 12591 and argue that the section allows them to attack the underlying orders on the basis that notice was not given to the Attorney General. Their point is that the trial court *Page 602 
lacked fundamental jurisdiction. But they cite no authority for the proposition that they, as distinguished from the Attorney General, can raise the point.
Appellants also rely on Probate Code Appendix section 17200. Their point is that Gibson filed her petition under that authority for the purpose of modifying the trust and that authority is the authority for modifying a trust. Under Probate Code Appendix section 17200, appellants would be entitled to notice if they qualified as (1) successor trustees (Prob. Code appen., §§ 17203, subd. (a); 84), or (2) interested persons entitled to notice for purpose of the estate tax aspect of Gibson's petition (Prob. Code appen., §§ 17200, subd. (b)(15), 48, 34). But appellants do not argue and develop the successor-trustee point, though they did advance it below. And appellants do not cite any authority for the proposition that they qualified as interested persons for purposes of the estate tax aspect of the petition, an aspect in which appellants had no practical interest.
Devine replies that Probate Code Appendix section 17200 cannot apply because Gibson was an executor rather than a trustee or beneficiary.
Appellants, however, implicitly discount this procedural irregularity. (Cf. Estate of Connolly (1975) 48 Cal.App.3d 129, 131, fn. 1 [claim that the trial court was without subject matter jurisdiction over an executor's petition for instructions because the petition should have been one to determine heirship exalted form over substance where the proceedings were essentially equivalent].)
By way of a negative argument, Devine urges that appellants were not entitled to statutory notice. He adopts the trial court's reasoning that Gibson's petition should be construed as an executor's petition for instructions under Probate Code Appendix section 9611. If it is so construed, the relevant notice provision is Probate Code Appendix section1220. Under Probate Code Appendix section 1220, only those who have requested special notice are entitled to notice.[7] Devine concludes appellants were not entitled to notice because they did not file a request for special notice.
Strictly speaking, Devine is correct. But an executor's petition for instructions presupposes that the executor or another person commenced a probate proceeding (Prob. Code appen., § 8000) and gave notice to executors (if applicable), heirs, devisees, creditors, the Attorney General (if applicable), *Page 603 
and others (Prob. Code appen., §§ 8110 — 8113) so that such persons might know about the proceeding and have the opportunity to file a request for special notice. Here, the APA never received notice of the probate proceeding and, thus, never had an opportunity to file a request for special notice. In any event, appellants counter that, since Probate Code Appendix section 17200
is the authority for modification of a trust and modification of a trust is what Gibson's petition sought, Probate Code Appendix section 9611
does not apply because the section is applicable only "in all cases where no other procedure is provided by statute."
None of these statutory paths to a notice requirement leads to a clear-cut answer. But constitutional due process principles do. We conclude that the APA and Firestein were entitled to notice of the 1989 proceedings.
The Fourteenth Amendment of the United States Constitution provides that a state may not "deprive any person of life, liberty or property without due process of law."
The concept of property in California is extremely broad. "`The term "property" is sufficiently comprehensive to include every species of estate, real and personal, and everything which one person can own and transfer to another. It extends to every species of right and interest capable of being enjoyed as such upon which it is practicable to place a money value.'" (Yuba River Power Co. v. Nevada Irr. Dist. (1929)207 Cal. 521, 523; see Rest., Property, Definition of General Terms (1936) §§ 1-4 ["property" denotes a right, privilege, power, or immunity between persons with respect to a physical or intangible thing]; see, e.g., Tulsa Professional Collection Services v. Pope (1988)485 U.S. 478, 485 [cause of action against estate is a protected property interest].)
"Being broad, the concept of property is also abstract: rather than referring directly to a material object such as a parcel of land or the tractor that cultivates it, the concept of property is often said to refer to a `bundle of rights' that may be exercised with respect to that object — principally the rights to possess the property, to use the property, to exclude others from the property, and to dispose of the property by sale or by gift. `Ownership is not a single concrete entity but a bundle of rights and privileges as well as of obligations.' [Citation.] But the same bundle of rights does not attach to all forms of property. For a variety of policy reasons, the law limits or even forbids the exercise of certain rights over certain forms of property. For example, both law and contract may limit the right of an owner of real property to use his parcel as he sees fit. Owners of various forms of personal property may likewise be subject to restrictions on the time, place, and *Page 604 
manner of their use. Limitations on the disposition of real property, while less common, may also be imposed. Finally, some types of personal property may be sold but not given away, while others may be given away but not sold, and still others may neither be given away nor sold. [¶] In each of the foregoing instances, the limitation or prohibition diminishes the bundle of rights that would otherwise attach to the property, yet what remains is still deemed in law to be a protectible property interest. `Since property or title is a complex bundle of rights, duties, powers and immunities, the pruning away of some or a great many of these elements does not entirely destroy the title. . . .' [Citation.]" (Moore v. Regents of University of California (1990)51 Cal.3d 120, 165-166, fns. omitted (dis. opn. of Mosk, J.).)
Here, Sigourney's will created certain rights and powers in favor of the APA and "an individual who is at any time Treasurer" of the APA: it granted the treasurer a trusteeship and it granted the APA the right and power to appoint a trustee if its treasurer could not or would not serve. We have no doubt that such intangible interests are property protected by the Fourteenth Amendment.
Devine argues that the described rights and powers are so contingent and remote as to be ephemeral. He claims that there was no certainty that Firestein would ever succeed Pacella as trustee and the APA's power to appoint was speculative. He concludes that these interests are insufficient to rise to the level of a constitutionally protected property interest. We disagree.
A future interest in property is an interest that is not, but may become, a present interest. (Rest., Property, Future Interests — Definitions (1936) § 153, p. 521.) In other words, a property interest need not "be free from conditions precedent or subsequent which may preclude it from ever becoming a present interest." (Ibid.) Thus, the contingent nature of Firestein's trusteeship or the APA's power to appoint is of no moment.
To the extent that a remote interest is more amorphous than a contingent interest, we point out that even remote interests are entitled to a measure of due process. (Mullane v. Central Hanover Tr. Co. (1950)339 U.S. 306, 317-318 [notice by publication to unknown trust beneficiaries, "many of whose interests in the common fund are so remote as to be ephemeral," sufficient for due process purposes].) Here, no due process was afforded to appellants. Additionally, however, the interests of Firestein and the APA are not as remote as Devine urges.
Devine concedes that the original paragraph 4 is ambiguous and can be interpreted as limiting the time of Pacella's trusteeship to Pacella's tenure as *Page 605 
the APA's treasurer. Since Gibson knew or should have known that Pacella was not running for treasurer and that Firestein and Carlson were running, it was an approaching possibility (under one interpretation of paragraph 4) that either Firestein or Carlson would qualify for the trusteeship or that the APA would have an opportunity to exercise its power. It follows that Gibson should have given notice to the APA, as well as Firestein and Carlson. (Cf. Mullane v. Central Hanover Bank Tr. Co.,supra, 339 U.S. at pp. 318-320 [notice by publication to known trust beneficiaries insufficient for due process purposes].)
The lack of notice deprived the APA (and Firestein and Carlson) of the opportunity to advocate in favor of their interpretation of the ambiguity in paragraph 4. It also deprived them of the opportunity to argue against what Devine concedes to be a "redraft" of Sigourney's will ("to conform to her wishes" and "to eliminate the provision erroneously giving the APA the authority to appoint a successor trustee"). And it further deprived them of the opportunity to be heard generally as to the proposed modifications. The practical effect of a reversal is therefore to reinstate the opportunities and, if applicable, the opportunities to be heard as to the 1990 and 1991 modifications.
We are constrained to add for the trial court's guidance that a trust can be modified if provisions are ambiguous or if "slavish adherence" to the terms of the trust would defeat the primary purpose of the trust; but neither Probate Code Appendix section 17200 nor the common law of trusts permits the creation of a new agreement under the guise of a modification or reformation. (Ike v. Doolittle (1998) 61 Cal.App.4th 51,80-85.)
 DISPOSITION
The order instructing co-trustee is reversed. The trial court is directed to entertain Gibson's 1989 petition, upon proper notice to the APA and Fischer (or the current treasurer of the APA). The trial court is then directed to enter an order that is consistent with the ruling and another consistent order that states the terms of the charitable trust. If the orders provide that appellants, or any of them or their officers, have rights or powers under paragraph 4 of the charitable trust, the trial court is instructed to entertain Devine and Pacella's 1990 and 1991 petitions, upon proper notice, and render orders consistent with any rulings. If applicable and necessary, the trial court shall thereafter entertain a petition to appoint the APA's treasurer or nominee as Pacella's successor. If Gibson fails to notice a hearing on her 1989 petition within 30 days of the remittitur, the trial court is instructed to enter an order *Page 606 
denying the petition and another order stating the terms of the charitable trust that are consistent with the terms of the testamentary trust. Appellants are awarded costs on appeal.
We Concur:
ELIA, J.
MIHARA, J.
[1] Probate Code Appendix section 17200 (the Probate Code operative in 1989) provides as follows:
"(a) Except as provided in Section 15800, a trustee or beneficiary of a trust may petition the court under this chapter concerning the internal affairs of the trust or to determine the existence of the trust.
(b) Proceedings concerning the internal affairs of a trust include, but are not limited to, proceedings for any of the following purposes:
(1) Determining questions of construction of a trust instrument.
(2) Determining the existence or nonexistence of any immunity, power, privilege, duty, or right.
(3) Determining the validity of a trust provision.
(4) Ascertaining beneficiaries and determining to whom property shall pass or be delivered upon final or partial termination of the trust, to the extent the determination is not made by the trust instrument.
(5) Settling the accounts and passing upon the acts of the trustee, including the exercise of discretionary powers.
(6) Instructing the trustee.
(7) Compelling the trustee to report information about the trust or account to the beneficiary, if (A) the trustee has failed to submit a requested report or account within 60 days after written request of the beneficiary and (B) no report or account has been made within six months preceding the request.
(8) Granting powers to the trustee.
(9) Fixing or allowing payment of the trustee's compensation.
(10) Appointing or removing a trustee.
(11) Accepting the resignation of a trustee.
(12) Compelling redress of a breach of the trust by any available remedy.
(13) Approving or directing the modification or termination of the trust.
(14) Approving or directing the combination or division of trusts.
(15) Amending or conforming the trust instrument in the manner required to qualify a decedent's estate for the charitable estate tax deduction under federal law, including the addition of mandatory governing instrument requirements for a charitable remainder trust as required by final regulations and rulings of the United States Internal Revenue Service, in any case in which all parties interested in the trust have submitted written agreement to the proposed changes or written disclaimer of interest.
(16) Authorizing or directing transfer of a trust or trust property to or from another jurisdiction.
(17) Directing transfer of a testamentary trust subject to continuing court jurisdiction from one county to another.
(18) Approving removal of a testamentary trust from continuing court jurisdiction.
(19) Reforming or excusing compliance with the governing instrument of an organization pursuant to Section 16105."
[2] Probate Code Appendix section 17203 states: "At least 30 days before the time set for the hearing on the petition, the petitioner shall cause notice of the time and place of hearing to be mailed to any of the following persons who are not petitioners:
(a) All trustees.
(b) All beneficiaries who are entitled to notice.
(c) The Attorney General, if the petition relates to a charitable trust subject to the jurisdiction of the Attorney General, unless the Attorney General waives notice."
Probate Code Appendix section 84 states: "`Trustee' includes an original, additional, or successor trustee, whether or not appointed or confirmed by a court."
Government Code section 12591 states: "The Attorney General may institute appropriate proceedings to secure compliance with this article and to invoke the jurisdiction of the court. The powers and duties of the Attorney General provided in this article are in addition to his existing powers and duties. Nothing in this article shall impair or restrict the jurisdiction of any court with respect to any of the matters covered by it, except that no court shall have jurisdiction to modify or terminate any trust of property for charitable purposes unless the Attorney General is a party to the proceedings."
[3] Firestein was elected in December 1989 and served until December 1995 when Fischer was elected.
[4] Probate Code Appendix section 9611 states:
"(a) In all cases where no other procedure is provided by statute, upon petition of the personal representative, the court may authorize and instruct the personal representative, or approve and confirm the acts of the personal representative, in the administration, management, investment, disposition, care, protection, operation, or preservation of the estate, or the incurring or payment of costs, fees, or expenses in connection therewith. Section 9613 does not preclude a petition for instructions under this section.
(b) Notice of the hearing on the petition shall be given as provided in Section 1220."
[5] Probate Code Appendix section 1220, subdivision (c), provides: "Unless the section requiring notice specifies the persons to be given notice, notice shall be mailed to all of the following: [¶] (1) The personal representative. [¶] (2) All persons who have given notice of appearance in the estate proceeding in person or by attorney. If the person appeared by attorney, the notice shall be mailed to the attorney." Subdivision (f) provides: "The court for good cause may dispense with the notice otherwise required to be given to a person as provided in this section."
[6] Probate Code Appendix section 48 provides:
"(a) Subject to subdivision (b), `interested person' includes any of the following: [¶] (1) An heir, devisee, child, spouse, creditor, beneficiary, and any other person having a property right in or claim against a trust estate or the estate of a decedent which may be affected by the proceeding. [¶] (2) Any person having priority for appointment as personal representative. [¶] (3) A fiduciary representing an interested person. [¶] (b) The meaning of `interested person' as it relates to particular persons may vary from time to time and shall be determined according to the particular purposes of, and matter involved in, any proceeding."
Probate Code Appendix section 34 states: "(a) `Devisee' means any person designated in a will to receive a devise. [¶] (b) In the case of a devise to an existing trust or trustee, or to a trustee on trust described by will, the trust or trustee is the devisee and the beneficiaries are not devisees."
[7] Though an executor is also entitled to notice under Probate Code Appendix section 1220, our context is that of an executor's petition. (Prob. Code appen., § 1201 [notice need not be given to oneself].) *Page 607