Filed 1/28/14  Smith v. Wilmington Trust CA/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FIVE

| | |
|---|---|
| CANDACE CALDWELL SMITH, as Trustee, etc., <br><br> Plaintiff and Respondent, <br><br> v. <br><br> WILMINGTON TRUST, etc., <br><br> Defendant and Appellant; <br><br> WILLIAM CALDWELL et al., <br><br> Respondents. | B248042 <br> (Los Angeles County <br> Super. Ct. No. BP065024) |

APPEAL from an order of the Superior Court of Los Angeles County, Michael I. Levanas, Judge.  Affirmed.

Mitchell Silberberg & Knupp, Allan B. Cutrow and Nahla B. Rajan for Defendant and Appellant.

Glaser Weil Fink Jacobs Howard Avchen & Shapiro, Barry E. Fink and Joel N. Klevens; and Bird, Marella, Boxer, Wolpert, Nessim, Drooks & Lincenberg and Dorothy Wolpert for Plaintiff and Respondent Candace Caldwell Smith.

Finestone & Richter, William Finestone, Eric F. Edmunds, Jr., and Stacey N. Knox for Respondents William Caldwell V., Blake Caldwell and Tyler Caldwell.

# I. INTRODUCTION

Plaintiff, Wilmington Trust, N.A., appeals from an order granting summary adjudication in favor of defendants, William M. Caldwell V, Blake Caldwell and Tyler Caldwell. On September 6, 2011, plaintiff was appointed administrator with will annexed of the estate of William M. Caldwell IV ("William IV"[1]). Defendants are the living descendants of William IV. On May 31, 2012, defendants moved for summary adjudication. Defendants argued William IV's share of the Caldwell Living Trust ("the trust") belongs to his subtrust, not his probate estate. On January 31, 2013, the probate court granted defendants' motion. Plaintiff argues the probate court erred. Plaintiff asserts William IV had exercised his right to remove assets from the trust, which thereby belong to his estate. We affirm the order.

# II. BACKGROUND

## A. Summary Adjudication Motion, Opposition And Reply

Defendants are beneficiaries of the trust. Defendants are the natural born sons of William IV. On January 13, 2012, plaintiff petitioned for instructions regarding involvement in a dispute with the trust. Plaintiff asserted William IV's wife believed her husband had exercised his power to withdraw his interest in the trust.

On May 31, 2012, defendants moved for summary adjudication pursuant to Code of Civil Procedure section 437c. Defendants argued the assets from the trust for the benefit of William IV should be distributed to his subtrust. Defendants asserted William IV's assets were never withdrawn from the subtrust. Defendants also argued William IV never exercised his appointment power over his assets from the subtrust. On

---

[1] Because a number of the litigants share a common surname, we will refer to them by their first names, after initially introducing them by their full names. Of course, no disrespect is intended.

October 18, 2012, plaintiff filed its opposition. Plaintiff argued William IV's subtrust came into existence upon William M. Caldwell III's ("William III") death. William III was the settlor of the trust. Plaintiff asserted William IV had exercised his power to withdraw assets. Plaintiff concedes William IV did not exercise any appointment power. On October 26, 2012, defendants filed their reply. Defendants argued no withdrawal occurred because William IV's subtrust did not have any assets to withdraw.

## B. Undisputed Facts

### 1. Formation of the trust and pertinent provisions

William III established the trust on August 17, 1988. The trust was amended and restated on July 21, 2000. The trust contains real estate, stock, money and personal property. The trust became irrevocable on September 24, 2000, when William III died.

The trust sets forth the division of the remaining balance of the estate after William III's death: "Within a reasonable time after my death . . . the Trustee shall divide the entire remaining balance of the trust estate into shares for my descendants who survive me, according to the principle of representation. A child of mine shall be deemed to have predeceased me if such child fails to survive me by 90 days." The trust provides three subtrusts for William III's children: William IV; Craig E. Caldwell, Sr., ("Craig, Sr.); and Candace Caldwell Smith. The trust estate was distributed to William III's children in the form of subtrusts, not outright. Each of William III's children received a lifetime power of withdrawal from, and testamentary power of appointment over, their respective subtrust. William IV did not exercise his power of appointment.

Article VII of the trust encompasses the provisions concerning William IV's subtrust. Article VII, paragraph A of the trust provides, "A trust for BILL, IV shall be established by the Trustee at such time as the Trustee first receives any distribution of assets allocated to BILL, IV." Article VII, paragraph D of the trust governs the power to

3

withdraw trust principal: "At any time or times during BILL, IV's lifetime, BILL, IV shall have the power to withdraw all of any part of the principal of the trust for any purpose. Such power of withdrawal shall be exercisable only by a written instrument signed by BILL, IV and delivered to the then acting Trustee of the trust."

In the event William IV died, the trust describes the distribution of assets in article VII, paragraph F: "Within a reasonable time after BILL, IV's death, the Trustee first shall pay or make provisions for the payment of all estate, inheritance, or other death taxes attributable to the assets of BILL, IV's trust and payable as a result of BILL, IV's death. Next, the Trustee shall distribute the entire remaining balance of the trust estate in such manner as BILL, IV has appointed effectively. Finally, the Trustee shall divide any portion of the remaining balance of the trust estate over which BILL, IV has not exercised such power of appointment effectively into shares for BILL, IV's then living descendants, according to the principle of representation." The trust defines "descendants" as follows, "As used in this instrument, the term[] . . . 'descendants' . . . shall be interpreted as provided by California law, except that the parent-child relationship shall not include persons adopted after attaining majority." William IV's living descendants are defendants. William IV died on December 13, 2010.


2. Craig, Sr., and son's lawsuits


On November 28, 2000, Craig, Sr., challenged the distribution of the trust, arguing that a writing amended the trust to provide him with a greater share. Following a six-day trial, the probate court denied Craig, Sr.'s petition. We affirmed the probate court's order denying Craig, Sr.'s petition. (*Caldwell v. Ross* (Jun. 14, 2005, B179385) [nonpub. opn.].)

Pursuant to a no contest provision in the trust, the trustee at the time, Retired Judge Edward M. Ross, moved for judgment on the pleadings to disinherit Craig, Sr. On

December 14, 2005, the probate court granted the motion.  We affirmed the probate court's order.  (*Caldwell v. Ross* (Dec. 20, 2006, B189273) [nonpub. opn.].)

On July 7, 2006, the probate court ordered the trustee to distribute Craig, Sr.'s forfeited share of the trust to William IV and Ms. Smith, each a one-half interest.  Craig, Sr., appealed the order.  We affirmed the order under review.  (*Caldwell v. Ross* (Nov. 26, 2007, B197707) [nonpub. opn.].)  Judge Ross did not allocate any trust property for distribution to the subtrusts.  On January 20, 2009, Judge Ross resigned as trustee.  The court appointed as successor trustees William IV and Ms. Smith.

Craig Caldwell, Jr., ("Craig, Jr.") later pursued his own lawsuits challenging Craig, Sr.'s disinheritance with respect to his descendants.  On September 14, 2007, Craig., Jr., appealed an order denying his motion to vacate the probate court's July 7, 2006 order.  (*Ross v. Caldwell* (B202368, May 28, 2008) [nonpub. opn.].)  We dismissed the appeal for lack of standing.  (*Ibid.*)  On March 10, 2010, Craig, Jr., petitioned to set aside void orders and determine construction of the trust.  The probate court denied Craig, Jr.'s petition.  We affirmed the probate court's order.  (*Caldwell v. Caldwell* (Sept. 19, 2011, B228395) [nonpub. opn.].)  The decision became final on November 21, 2011.  During the entirety of both Craig, Sr. and Craig, Jr.'s lawsuits, up to this appeal, the trust held all properties in the trust's name and possession.  The trust, not the subtrusts, filed income tax returns and paid taxes related to income generated by the trust.

### 3.  Candace and William IV's agreement and joint petition

On September 16, 2008, William IV and Ms. Smith entered into an agreement regarding distribution of the trust once they became co-trustees.  William IV and Ms. Smith agreed to the following, "Notwithstanding anything contained in the Caldwell Living Trust to the contrary, each of the parties shall be deemed to have exercised his or her power of appointment, appointing the assets of his or her subtrust to himself or herself, as the case may be, outright and free of trust.  Bill [IV] and Candace, as Co-

5

Trustees of the Caldwell Living Trust, shall distribute the Caldwell Living Trust, outright and free of trust, so that each party receive[s] assets equal in value to fifty percent of the value of the balance of the Caldwell Living Trust . . . ."

Prior to the resolution of Craig, Jr.'s lawsuit, Ms. Smith and William IV filed a joint petition with the probate court on September 2, 2010, concerning distribution of the trust. The trustees alleged, "In accordance with the provisions of the Caldwell Living Trust, each of Bill [William IV] and Candace has exercised the lifetime power of withdrawal given to them under Section D of Article VII and Section D of Article IX of the Trust, respectively, and elected to withdraw all of the assets of their respective subtrusts." Following the distribution of other assets, the trustees requested, "The remaining balance of the trust estate, including the Remaining Reserve, shall be distributed to Bill [William IV] and Candace, in equal shares, in accordance with the provisions of the Caldwell Living Trust." There was no decree of distribution of any assets to their respective subtrusts.

D. Hearing And Probate Court Order

On December 26, 2012, the hearing on the summary adjudication motion was held. On January 31, 2013, the probate court issued its statement of decision, granting defendants' summary adjudication motion. The probate court found the moving party had met its initial burden of production under the terms of the trust. (Code Civ.Proc.,§ 437c, subd. (p); *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 848-852.) The probate court concluded the subtrusts were not in existence because no property had been allocated or distributed from the trust. The probate court found plaintiff's argument concerning a vested interest was irrelevant. On February 22, 2013, plaintiff filed a mandate petition. (*Wilmington Trust, N.A. v. The Superior Court of Los Angeles County* (B247031, Apr. 4, 2013) [nonpub. opn.].) We denied the writ petition

6

because the probate court's order was appealable. (*Ibid.*) On April 5, 2013, plaintiff filed its notice of appeal.


## III. DISCUSSION


### A. Overview


Our Supreme Court has held: "The interpretation of a will or trust instrument presents a question of law unless interpretation turns on the credibility of extrinsic evidence or a conflict therein. [Citations.]" (*Burch v. George* (1994) 7 Cal.4th 246, 254; *see Tunstall v. Wells* (2006) 144 Cal.App.4th 554, 561 [same]; see Prob. Code[2] § 21102, subd. (a) ["The intention of the transferor as expressed in the instrument controls the legal effect of the dispositions made in the instrument."].) Under section 21122, "The words of an instrument are to be given their ordinary and grammatical meaning unless the intention to use them in another sense is clear and their intended meaning can be ascertained." Our Supreme Court has held: "Extrinsic evidence is 'admissible to interpret the instrument, but not to give it a meaning to which it is not reasonably susceptible' [citations], and it is the instrument itself that must be given effect. [Citations.] It is therefore solely a judicial function to interpret a written instrument unless the interpretation turns upon the credibility of extrinsic evidence." (*Parsons v. Bristol Development Co.* (1965) 62 Cal.2d 861, 865; *Gardenhire v. Superior Court* (2005) 127 Cal.App.4th 882, 888.) The Court of Appeal has held, "[W]here the evidence is undisputed and the parties draw conflicting inferences, [the appellate court] will independently draw inferences . . . ." (*City of El Cajon v. El Cajon Police Officers' Assn.*

---

[2] Except as noted, all statutory references are to the Probate Code.

7

(1996) 49 Cal. App.4th 64, 71, citing *Parsons v. Bristol Development Co.*, *supra*, 62 Cal.2d at p. 866, fn. 2.)

The summary adjudication order was appealable because it decided internal trust matters, including establishing a right to distribution of its assets. (Code Civ. Proc., § 904.1, subd. (a)(10); §§ 1304, subd. (a), 17200, subds. (a)-(b)(2).) We review questions of law and orders granting summary adjudication de novo. (*County of San Diego v. Ace Property & Casualty Ins. Co.* (2005) 37 Cal.4th 406, 414; *Aguilar v. Atlantic Richfield Co., supra,* 25 Cal.4th at p. 860.) Plaintiff contends: William IV's subtrust was funded prior to his death; William IV was not required to survive until his subtrust was funded; defendants stipulated that William IV's interest in the trust was vested; and William IV exercised his power of withdrawal. We disagree.


## B.  William IV's Sub-Trust Was Not Established


Defendants, the living descendants of William IV, argue his subtrust was not established prior to his death. Defendants produced evidence indicating no distribution of property from the trust to William IV's subtrust has occurred. The trust continues paying the taxes for the trust property. The trust maintains title and possession over the trust's properties. Neither Judge Ross, William IV nor Ms. Smith have distributed any assets to the subtrusts. Defendants met their initial production burden of demonstrating William IV did not exercise his power to withdraw assets from his subtrust.

Plaintiff does not dispute the material facts, only their characterization. Plaintiff argues William IV's power to withdraw existed when William III died. The trust states, "A trust for BILL, IV shall be established by the Trustee at such time as the Trustee first receives any distribution of assets allocated to BILL, IV." William IV's subtrust is established, or brought into existence, when the trustee receives any distribution of assets allocated to William IV.

8

Plaintiff argues William IV's subtrust became established as soon as he received any interest in the property, including a future interest. Plaintiff relies on the following language in *Estate of Sigourney* (2001) 93 Cal.App.4th 593, 603: "The concept of property in California is extremely broad. '"The term 'property' is sufficiently comprehensive to include every species of estate, real and personal, and everything which one person can own and transfer to another. It extends to every species of right and interest capable of being enjoyed as such upon which it is practicable to place a money value."' [Citations.]" (See *Yuba River Power Co. v. Nevada Irr. Dist.* (1929) 207 Cal. 521, 523.)

Plaintiff argues it is irrelevant whether specific assets from the trust were legally transferred to William IV's subtrust. However, the provisions of the trust require a distribution of assets from the trust for the subtrust to exist. "Distribution of assets" here would ordinarily mean passing of property held by the trust to the trustee for William IV. Plaintiff contends the transferred property included William IV's interest in the property. Plaintiff's argument does not reconcile with the express trust language. William IV's potential interest in his allocated property is not a trust asset for purposes of distribution. Black's Law Dictionary (9th ed. 2009), at page 134, column 1, defines "assets" as, "All the property of a person ([especially] a bankrupt or deceased person) available for paying debts or for distribution." (See *In re Estate of Kemp* (Ohio App. 2010) 937 N.E. 2d 1102, 1104.) Whether William IV had property because of his trust interest is not relevant for establishing his subtrust. The assets necessary to establish William IV's subtrust were William III's property. As noted, there has been no distribution of assets. Thus, the subtrust was not established at the time of William III's death.

Alternatively, plaintiff contends William IV's subtrust was funded on January 30, 2008. On that date, the probate court's order that the trustee distribute the trust assets to William IV and Ms. Smith became final. Plaintiff refers to the order issued July 7, 2006, in which the probate court ordered distribution of Craig, Sr.'s forfeited share to William IV and Ms. Smith. As noted, Craig, Sr., appealed the July 7, 2006 order. We

9

affirmed the order, and our decision became final on January 30, 2008. (*Caldwell v. Ross* (Nov. 26, 2007, B197707) [nonpub. order].) Plaintiff's argument is unpersuasive. As noted, no actual distribution of trust assets has occurred. The July 7, 2006 order addressed the sole issue of what should be done with Craig, Sr.'s share. Our opinion did not order the distribution of trust assets to William IV or Ms. Smith.

Plaintiff argues the trust provided William IV with the power to withdraw assets that he could, and did, use during his lifetime. Plaintiff cites to the September 16, 2008 agreement between Ms. Smith and William IV and their joint petition filed September 2, 2010. Though the September 16, 2008 agreement referred to a power of appointment, plaintiff argues William IV and Ms. Smith actually meant power of withdrawal. Plaintiff's argument is without merit. As noted, William IV's withdrawal power is found at Article VII, paragraph D of the trust. William IV's withdrawal power was directly related to the existence of the subtrust. Article VII of the trust is entitled "WILLIAM M. CALDWELL, IV TRUST." The next paragraph provides, "After my [William III] death, the WILLIAM M. CALDWELL, IV TRUST shall be held, administered, and distributed as set forth below." As noted, the William IV subtrust is established at such time as the trustee receives a distribution of assets.

Section 21121 provides, "All parts of an instrument are to be construed in relation to each other and so as, if possible, to form a consistent whole." (See *Newman v. Wells Fargo Bank* (1996) 14 Cal.4th 126, 154.) William IV's withdrawal power was a part of the trust section concerning his subtrust. The most reasonable interpretation of the trust language is William IV's withdrawal power over his subtrust exists only when his subtrust is first established. As noted, no asset distribution has occurred to establish his subtrust. Accordingly, his subtrust does not yet exist. William IV had no withdrawal power until his subtrust was established. Whether William IV intended to withdraw from his subtrust does not demonstrate he did use his withdrawal power during his lifetime. He could not exercise a power he did not yet have.

10

Defendants met their burden of production in favor of summary adjudication. (Code Civ. Proc., § 437c, subd. (p)(2); *Aguilar v. Atlantic Richfield Co., supra*, 25 Cal.4th at p. 849.) Plaintiff did not raise a triable issue of material fact. As a matter of law, William IV did not exercise his withdrawal power over any property in his subtrust. William IV's subtrust is not yet established. The probate court did not err by granting defendants' summary adjudication motion.

IV.  DISPOSITION

The probate court's order is affirmed. Defendants, William M. Caldwell V, Blake Caldwell and Tyler Caldwell, are awarded their appeal costs from plaintiff, Wilmington Trust, N.A.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

TURNER, P. J.

I concur:

KRIEGLER, J.

11

Rothschild, J., dissenting:

On July 7, 2006, the superior court ordered the distribution of Craig Sr.'s forfeited one-third share of the trust assets to William IV and Ms. Smith. Our decision affirming that order became final on January 30, 2008. On September 16, 2008, William IV and Ms. Smith executed a written agreement providing that they were withdrawing all of the assets of their subtrusts. William IV died on December 13, 2010.

In my view, the order concerning distribution of Craig Sr.'s forfeited share to William IV and Ms. Smith was sufficient to create the subtrusts, regardless of whether the trustee failed to comply with the order before William IV died. In *Estate of Newman* (1964) 230 Cal.App.2d 158, the testator directed that upon the death of his wife, certain shares of his estate were to be distributed to certain beneficiaries unless they were "'not living at the time of said distribution.'" (See *id.* at pp. 161-163.) One of the beneficiaries died after the wife died but before any assets were actually distributed. (*Id.* at p. 161.) The trial court ruled, and the Court of Appeal affirmed, that the deceased beneficiary's share should pass to his estate rather than being divided among the surviving beneficiaries. The court reasoned that the "'date of distribution'" was the date of the wife's death, "not the date when, all of the sundry mechanical problems involved in the transfer of record title having been accomplished, physical delivery of the trust assets could be accomplished. Instruments of conveyance must be drawn, executed and recorded, stock certificates must be endorsed, delivered to corporate transfer agents and registrars, and returned, checks must be drawn and receipts prepared. If the death of a remainderman in the midst of this process were to divest his interest, the process might well become incredibly repetitious. While a testator or trustor may legally direct such result, it should not be assumed that he so intended except in the light of the most explicit and positive language; no such language faces us here." (*Id.* at pp. 164-165.)

Here, the trust instrument expressly tied the creation of William IV's subtrust to the "distribution of assets allocated to BILL, IV." The superior court's order of July 7, 2006, directed such a distribution and became final on January 8, 2008, well ahead of

William IV's express written withdrawal of his assets from the subtrust. I conclude that *Estate of Newman* is not materially distinguishable and that the trustee's failure to comply with the distribution order before William IV died should not be allowed to defeat the express written intent of both William III and William IV. I would accordingly reverse the order of the superior court in the case now before us, and I therefore respectfully dissent.


ROTHSCHILD, J.[*]

---

[*] Associate Justice of the Court of Appeal, Second Appellate District, Division One, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

2