[Civ. No 30589. Second Dist., Div. Two. Feb. 15, 1968.]

Estate of CLARENCE ALLISON REED, Deceased. ALBERT H. REED, as Administrator With the Will Annexed, etc., Claimant and Appellant, v. BANK OF AMERICA, as Successor Trustee, etc., Petitioner and Respondent; LOYOLA UNIVERSITY OF LOS ANGELES et al., Claimants and Respondents.

Smith & Davis and Frank R. Davis for Claimant and Appellant.

Nicholas, Kolliner, Van Tassel & Myers, Wm. Howard Nicholas and Fred A. Weller for Petitioner and Respondent.

William L. Stein, Nossaman, Waters, Scott, Krueger & Riordan, Laughlin E. Waters, Jane R. Brady, J. Marion Wright and Owen E. Kupfer for Claimants and Respondents.

ROTH, P. J.—Clarence Allison Reed, a resident of Los Angeles, died on June 7, 1937. His wife predeceased him, but he was survived by his two children Paul R. Reed and Bessie May Sheehan.

Clarence's will, dated June 14, 1935, was duly admitted to probate. It provided for the creation of a trust with Paul as trustee and executor of the estate. The trust provisions of the will provided that Bessie was to receive ''one-half of the net income available for distribution, but not to exceed Two Hundred Dollars ($200.00) per month.'' The balance of the net income was to go to Paul. Clarence's will further provided that the trust was to terminate upon the death of Bessie and the corpus was to be distributed to Paul.

In order to clarify certain provisions of their father's will, Bessie and Paul entered into a written agreement on December 24, 1937, which was incorporated in the decree of distribution of Clarence's estate by the terms of which Paul, as trustee of Clarence's trust estate, was to pay Bessie the sum of $200 per month for the balance of her life ''and on Bessie's death, the balance remaining . . . , if any, shall go to the heirs at law of Paul, or to such other person or persons as he may designate by Will or otherwise.''

It also provided that:

'' (g) . . . in the event Paul should predecease Bessie, the one-half of the net income from said truste estate which would otherwise be distributed to Paul, . . . shall be distributed to Paul's heirs at law or such other person or persons as he may designate by Will or otherwise, and on Bessie's death, the entire principal of the trust estate shall be distributed to Paul's heirs at law, or such other person or persons as he may designate by Will or otherwise.''

'' (h) That on the death of Bessie, said trust shall cease and terminate.''

The trust gave Bessie no interest in the estate and/or the trust except as to income during her life.

The parties concede that under the trust Paul had three separate powers of appointment. We are concerned only with

the third power contained in the latter portion of "(g)" excerpted above. Appellant contends that the probate court had previously determined that Paul did not exercise the third power of appointment and that they therefore inherit as heirs of Bessie. Respondents assert that Paul did exercise the power, that they are the beneficiaries thereof, and that any prior determination was either void or corrected by a valid *nunc pro tunc* order. This appeal is from those portions of an order settling an account which, among other things, held that Paul properly exercised the power of appointment in question, a prior determination to the contrary was void, and that in any event, the void order was corrected by a valid *nunc pro tunc* order.

By order dated May 20, 1938, the court appointed Paul as trustee of Clarence's trust estate and incorporated subparagraph (g) of the December agreement.

Paul died on February 18, 1954. He had no children and his wife had predeceased him. His will, dated March 25, 1948, was admitted to probate. It provided for an increased share of income to Bessie and gave an undivided one-third of the remainder of his estate to each of respondents, St. Victor's Catholic Church, Loyola University of Los Angeles, and the Shriner's Crippled Children Hospital Fund. The will was not contested.

After Paul's death in 1954, respondent Bank of America National Trust and Savings Association (Bank) was appointed as successor trustee of the trust created by Clarence's will. On May 19, 1954, Bank filed the Sixteenth Account Current in Clarence's trust as successor trustee to Paul. This account like the prior accounts, merely concerned the distribution of trust income. Included in its account *was a request by the Bank for instructions relative to the question of whether Paul had exercised his power of appointment over his one-half of the net income* of the trust established by Clarence's will.

Notice of the Sixteenth Account Current was given only to Bessie and Bank. No notice was given to any of the three charities named as residuary beneficiaries under Paul's will. There is no dispute that the Bank trustee knew about the residuary charity beneficiaries and that addresses of all the charities were available.

In respect of the request for instructions the court on June 15, 1954, made the following order:

". . . [T]hat Bank . . . , as successor Trustee, be and it is

hereby instructed that the devise and bequest in the last Will of decedent, Paul R. Reed, of the residue of his estate to Bank . . . in trust, was not a good or sufficient exercise of the power of appointment conferred upon Paul R. Reed under Paragraph 7 of the Order for Distribution herein of May 20th, 1938, and Bank . . . is further instructed that the one-half of the net income from the trust estate which was being paid to Paul R. Reed during his lifetime and to which he was entitled during his lifetime, should now be paid directly to Bessie May Sheehan, as the sole heir at law of Paul R. Reed . . . ."

On June 30, 1954, the judge who made the order in respect of instructions granted a *nunc pro tunc* order requested by Bank, setting forth the following findings of fact:

"1. That Bessie May Sheehan is the sister and sole heir at law of Paul R. Reed, deceased;

"2. That the power of appointment given to Paul R. Reed under the Will of Clarence Allison Reed was not exercised;

"3. That it was the intention of the testator, Clarence Allison Reed, under his last Will, that upon the death of Paul R. Reed before Bessie May Sheehan, if the power of appointment given to him therein be not exercised, that Paul R. Reed's one-half of the distributable income of the trust estate pass to the heirs at law of said Paul R. Reed, deceased, free and clear of the restrictions limiting the bequest to Bessie May Sheehan to $200.00 per month.[1]

"4. That the limitation of $200.00 per month upon the funds distributable to said Bessie May Sheehan pursuant to the Will and Decree of Distribution establishing the trust applies only to funds distributable from the half of the trust income set aside for the benefit of Bessie May Sheehan. . . ." (The June 15 order and the *nunc pro tunc* order following it will hereafter be referred to as "original order.")

Thereafter, an Order Settling First and Final Account of Bank as executor of Paul's will, was made on March 31, 1955, and entered on April 1, 1955. This order has never been attacked.

Bessie died on April 18, 1964, thus invoking the termination clause of Clarence's trust.

On July 31, 1964, the Bank filed the Nineteenth and Final

---

[1]Payment of the income to Bessie, although subject to the inherent infirmity in the original order pointed out *infra,* is not under attack by respondents.

Account Current, together with Instructions for Distribution of the corpus of Clarence's trust. Bank requested distribution to itself as trustee. Appellant Reed, a cousin of Paul, filed opposition to this request. He claimed that he and other relatives of Paul, rather than the three charities, were entitled to distribution of the trust estate as Paul's heirs at law. Among other objections he alleged that: the original order held that Paul had not exercised his powers of appointment either as to income or principal; the original order had become final; this issue had been properly before the court and decided favorably to Bessie and is res judicata; and that the trustee Bank is estopped from denying the effect of the prior orders which it sought and obtained.

On January 11, 1967, respondent St. Victor's Catholic Church, joined by the two other respondents, moved the court to vacate a portion of the June 15, 1954 Order (first part of original order) and enter *nunc pro tunc* in its place, the following:

"It Is FURTHER ORDERED that Bank . . . as successor trustee, be and it is hereby instructed that the devise and bequest in the last Will of decedent, Paul R. Reed, of the residue of his estate to Bank . . . in trust, was not a good or sufficient exercise of the power of appointment *as to income* conferred upon Paul R. Reed under Paragraph 7 of the Order for Distribution herein of May 20th, 1938, and Bank . . . is further instructed that the one-half of the net income from the trust estate which was being paid to Paul R. Reed during his lifetime and to which he was entitled during his lifetime . . . should now be paid directly to Bessie May Sheehan, as the sole heir at law *as to income* of Paul R. Reed. . . ."

Other than the italicized phrase "as to income" this was the June 15, 1954 order.

Respondents also moved for an order vacating a portion of the order *nunc pro tunc* filed June 30, 1954 (second part of the original order), and entering *nunc pro tunc* in its place the following:

"1. That Bessie May Sheehan is the sister and sole heir-at-law of Paul R. Reed, deceased *as to income*;

"2. That the power of appointment given to Paul R. Reed under the Will of Clarence Allison Reed was not exercised *as to income*;

". . . . . . . . . . . . . . ."

Absent the italicized phrase "as to income" this was the June 30, 1954 order.

After hearing the testimony by Commissioner Lord, who as judge pro tem. made the original order, that it was his intent to decide the question of exercise or non-exercise of the power of appointment only as it pertained to income, the lower court granted the respondents' motions.

The court, in a memorandum opinion, stated that Paul exercised his power of appointment over corpus by designating the respondent charities as recipients under his will. It added that since the court which made the original order was only concerned with the disposition of income, and since it intended to decide the exercise or non-exercise of a power of appointment as to income, the inadvertent omissions in the original order may be corrected. The trial court further concluded that the charities were entitled to written notice in any proceeding involving the corpus of the estate and that it was error not to have given them notice or made them parties to the Sixteenth Account Current, and consequently the original order was not res judicata as to them. The charities, the court stated, were indispensable parties to any proceeding involving the corpus of the estate and any order purporting to determine their interests in the trust is void.

Appellant asserts that the original order is final and binding, and is thus res judicata as to all parties. If there was error in the original order, appellant argues, the error was "judicial" rather than "clerical." Such judicial error, he asserts, cannot be amended or clarified by subsequent order *nunc pro tunc*.

If the original order is void as the trial court found it to be and we think it is, there is no need to discuss the other point.

Respondents assert that it was apparent when the original order was made, that each of them had a definite interest in Paul's estate and since they were given no notice of the proceedings in respect of Sixteenth Account Current, the court was without jurisdiction to make that order.

At bench a notice of the Sixteenth Account Current which led to the original order was posted as required by the code sections and was personally mailed to the Bank and to Bessie, the parties named in the petition. It is admitted there was no notice of any kind to respondents.

The holding of the trial court that the original order was void for lack of jurisdiction is challenged by *Security-First Nat. Bank* v. *Superior Court*, 1 Cal.2d 749 [37 P.2d 69] and a line of cases which appear to follow it. (See e.g. *Estate of*

*Green,* 138 Cal.App.2d 211, 213-215 [292 P.2d 651] ; *Estate of Hensel,* 144 Cal.App.2d 429, 433-438 [301 P.2d 105] ; *Schaffer* v. *American Trust Co.,* 164 Cal.App.2d 653, 658-659 [331 P.2d 188].) In *Security, supra,* the remainderman under a trust moved to vacate orders approving the first nine accounts of the trustee on the ground that the orders were void because the trustee failed to give notice as required by Probate Code, sections 1120 and 1200.[2] The court in *Security* stated the familiar rule that probate proceedings are in rem, held that the order was not void on its face and could not be collaterally attacked.

*Security* was decided 15 years before *Mullane* v. *Central Hanover Bank & Trust Co.* (1949) 339 U.S. 306 [94 L.Ed. 865, 70 S.Ct. 652], which we think, on the facts before us, clearly holds that the statutory notice cannot be equated with due process. In *Mullane,* the court says at 94 L.Ed. pp. 873,

---

[2]At the time of the orders on the Sixteenth Account Current, Probate Code, section 1120 read in pertinent part as follows: ''. . . The clerk shall set the account and report or petition for settlement or hearing by the court and give notice thereof for the period and in the manner required by Section 1200 of this code. The trustee shall cause notice of the hearing to be mailed to the beneficiaries at their last known address, as provided in said Section 1200, whether they have requested special notice or given notice of appearance or not.''

Section 1200 provided in pertinent part: ''. . . Any petition for letters of administration or for probate of will, or for letters of administration-with-will annexed, which is filed after letters of administration or letters testamentary have once been issued; and in all cases in which notice is required and no other time or method is prescribed by law or by court or judge, the clerk shall set the same for hearing by the court and shall give notice of the petition or application or report or account by causing a notice of the time and place of hearing thereof to be posted at the courthouse of the county where the proceedings are pending, at least 10 days before the day of hearing, giving the name of the estate, the name of the petitioner and the nature of the application, referring to the petition for further particulars, and stating the time at which application will be heard.

''At least 10 days before the time set for the hearing of such petition, account or report, the petitioner or person filing the account or desiring the confirmation of a report of appraisers, must cause notice of the time and place of hearing thereof to be mailed to the executor or administrator, when he is not the petitioner, to any coexecutor or coadministrator not petitioning, and to all persons (or to their attorneys, if they have appeared by attorney), who have requested notice or who have given notice of appearance in the estate in person or by attorney, as heir, devisee, legatee or creditor, or as otherwise interested, addressed to them at their respective post-office . . . or places of residence, if known, and if not, at the county seat of the county where the proceedings are pending, or to be personally served upon such person.

''Proof of the giving of notice must be made at the hearing; and if it appears to the satisfaction of the court that said notice has been regularly given, the court shall so find in its order, and such order, when it becomes final, shall be conclusive upon all persons.''

874: ''An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. . . . [W]hen notice is a person's due, process which is a mere gesture is not due process. The means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it.'' The court says further at page 875: ''As to known present beneficiaries of known place of residence, . . . notice by publication stands on a different footing. Exceptions in the name of necessity do not sweep away the rule that within the limits of practicability notice must be such as is reasonably calculated to reach interested parties. Where the names and post-office addresses of those affected by a proceeding are at hand, the reasons disappear for resort to means less likely than the mails to apprise them of its pendency.''

*Mullane* discusses at some length the in rem character of some judgments but holds that a proceeding to determine the rights of beneficiaries under a trust is not embraced within the in rem classification and that when the rights of beneficiaries to a trust are inevitably affected, they are entitled to notice and are indispensable parties. The mere statement of this principle as a general proposition, is to accept it. (*McPherson* v. *Parker*, 30 Cal. 455, 457 [89 Am.Dec. 129]; *Mitau* v. *Roddan*, 149 Cal. 1, 6-8 [84 P. 145, 6 L.R.A. N.S. 275]; *First National Trust & Savings Bank* v. *Superior Court*, 19 Cal.2d 409, 414 [121 P.2d 729]; *Bowles* v. *Superior Court*, 44 Cal.2d 574, 585-586 [283 P.2d 704].) The rationale of the rule is that ''a judgment in favor of one claimant for part of the property or fund would necessarily determine the amount or extent which remains available to the others. Hence, any judgment in the action would inevitably affect their rights.'' (*Bank of California* v. *Superior Court*, 16 Cal.2d 516, 521 [106 P.2d 879].)

It cannot be doubted that the three charity beneficiaries of Paul's will had standing to appear at the Sixteenth Accounting in which the trustee Bank requested instructions which necessarily affected their rights. ''As a beneficiary under the trust created under said will in his favor he has the right, as a party beneficially interested, to appear and contest said account or to participate in any other proceeding affecting the property of said estate, and which might tend to

impair his beneficial interest in the trust created in his favor." (*Estate of Finch*, 202 Cal. 612, 615 [262 P. 34].)

 The requirement that indispensable parties be before the court is mandatory and may be raised at any time. A failure to join such parties constitutes a jurisdictional defect. (*Bank of California* v. *Superior Court, supra,* at page 522; *Sime* v. *Malouf,* 95 Cal.App.2d 82, 116 [212 P.2d 946, 213 P.2d 788]; *Wilson* v. *Frakes,* 178 Cal.App.2d 580, 584 [3 Cal. Rptr. 434]; *California Water Service Co.* v. *Edward Sidebotham & Son, Inc.,* 224 Cal.App.2d 715, 730 [37 Cal.Rptr. 1]; *Guerra* v. *Packard,* 236 Cal.App.2d 272, 294 [46 Cal.Rptr. 25]; Code Civ. Proc., § 389.) At the very least, the beneficiaries in the present case were entitled to notice "reasonably calculated" to reach them. (*Mullane* v. *Central Hanover Bank & Trust Co., supra,* 94 L.Ed. at page 875.)[3] Respondents at bench were at no time joined in the proceedings. The statutory notice which was given was in effect no notice to respondents. We conclude that the failure of the trustee to join the respondents and/or give more adequate notice to enable them to defend their interests in the trust resulted in a void order. (See *Estate of Johnson,* 233 Cal.App.2d 785, 791 [43 Cal.Rptr. 913].)

 The original order did not affect the right of Paul to exercise his power of appointment. It is settled that such power may be exercised by a disposition in a will.

Probate Code, section 125 provides that: "A devise or bequest of all the testator's real or personal property, in express terms, or in any other terms denoting his intent to dispose of all his real or personal property, passes all the real or personal property which he was entitled to dispose of by will at the time of his death, *including property embraced in a power to devise.*" (Italics added.) *Estate of Carter,* 47 Cal.2d 200 [302 P.2d 301], presented a factually similar situation to the instant case. In *Carter,* the decedent had created a testamentary trust for his wife, the terms of which granted her a power to appoint the "entire corpus . . . in favor of her own estate or of any other beneficiary or beneficiaries whom [she] . . . designate . . . but shall be effective only if exercised by a valid will of my said wife." (Page 202.) In her will the wife did not refer in express terms to the power of

---

[3]Notice given to the Bank as trustee and executor of Paul's estate is not binding on the beneficiaries. The Bank, as executor merely appeared in a passive role and at no time could it have represented the interests of the other respondents. (See *Estate of Charters,* 46 Cal.2d 227, 236 [293 P.2d 778]; *Potter* v. *Moran,* 239 Cal.App.2d 873, 879 [49 Cal.Rptr. 229].)

appointment, but bequeathed "all the rest, residue and remainder" of her estate to certain named charities. The court held that she had effectively exercised her power.

Paul had a power of appointment over the corpus of Clarence's trust estate. Paul's will disposed of his entire estate, devising one-third of the remainder of the corpus to each of the named charities. Such disposition constitutes an effective exercise of the power of appointment.

The order is affirmed.

Herndon, J., and Fleming, J., concurred.

A petition for a rehearing was denied March 13, 1968.