Filed 6/27/24  Donkin v. Federizo CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| ANNEMARIE DONKIN et al., <br><br> Plaintiffs and Respondents, <br><br> v. <br><br> AILEEN FEDERIZO, as Interim Trustee, etc., <br><br> Defendant and Respondent; <br><br> MATTHEW DONKIN et al., <br><br> Appellants. | B323043 <br><br> (Los Angeles County Super. Ct. No. BP109463) <br><br><br> ORDER MODIFYING OPINION (NO CHANGE IN THE JUDGMENT) |

The opinion in the above-entitled matter filed on May 30, 2024 is modified as follows:

On page 7, the language in footnote 5 is deleted and replaced with the following:

Matthew's notice is captioned as a notice of cross-appeal. Because Matthew's cross-appeal is the only challenge currently before us, we refer to Matthew's challenge simply as an appeal, rather than a cross-appeal.

This modification does not constitute a change in the judgment.

_____

ROTHSCHILD, P. J.        BENDIX, J.        WEINGART, J.

Filed 5/30/24  Donkin v. Federizo CA2/1 (unmodified opinion)

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| ANNEMARIE DONKIN et al., | B323043 |
| Plaintiffs and Respondents, | |
| v. | (Los Angeles County Super. Ct. No. BP109463) |
| AILEEN FEDERIZO, as Interim Trustee, etc., | |
| Defendant and Respondent; | |
| MATTHEW DONKIN et al., | |
| Appellants. | |

APPEAL from orders of the Superior Court of Los Angeles County, Ana Maria Luna, Judge.  Affirmed.

Matthew E. Donkin, in pro. per., for Appellant.

No appearance for Appellant Christopher Donkin.

Mark H. Boykin for Plaintiffs and Respondents Annemarie Donkin and Lisa Kim.

Rodnunsky & Associates and Yevgeny L. Belous for Defendant and Respondent Aileen Federizo, as Interim Trustee, etc.

Matthew Donkin appeals from two probate orders regarding the trust of his grandparents: one requiring the sale of a property in the trust and one requiring liquidation of the trust's assets. He argues that his contingent interest in the trust entitled him to notice of the proceedings leading to these orders, and that because he and other contingent beneficiary grandchildren did not receive such notice, the orders are void. We conclude that neither the Probate Code nor due process required notice to Matthew[1] of the petitions or proceedings resulting in the challenged orders.

Matthew also challenges the order appointing an interim trustee, respondent Aileen Federizo, as void for lack of proper service on any party. Even assuming Matthew has standing to challenge this order, we conclude it is not void for lack of proper service.

Finally, Matthew argues the probate court erred in declining to enforce the trust's no contest provisions, which he contends were triggered by the petition to liquidate the trust assets. Because Matthew had the opportunity to raise this issue below and did not, he has forfeited the argument.

Accordingly, we affirm the orders.

## FACTUAL BACKGROUND AND PROCEEDINGS BELOW

### A. *The Trust*

In August 1988, Rodney E. Donkin and Mary E. Donkin, a married couple, executed a revocable trust as part of their

---

[1] To avoid confusion, we use first names to identify the various members of the Donkin family involved in the events and proceedings leading to this appeal. No disrespect is intended thereby.

estate plan, which they then amended in 2002.[2]  According to the trust document, the primary beneficiaries of the trust after the death of both trustors were their children:  Rodney E. Donkin, Jr. (Rodney Donkin, Jr.), Lisa, and Annemarie.  "Rodney Jr. and his wife Vicki R. Donkin were named as 'first' co-successor trustees, while Lisa and Annemarie were . . . 'second' co-successor trustees."[3]  (*Donkin II, supra*, B266036, capitalization omitted.)

The trust provides that, upon the death of the first trustor (the predeceasing spouse or decedent), "the trustee shall divide the trust estate into two . . . separate shares" (capitalization omitted):  (1) the "Survivor's Trust" (Trust A), consisting of the surviving spouse's interest in Trustors' community property and the surviving spouse's separate property, and (2) the "Decedent's Marital Share," consisting of the predeceasing spouse's interest in the community property and the predeceasing spouse's separate property.  (Underscoring omitted.)  Upon the death of the surviving spouse, the trust requires the trustee to further divide the decedent's marital share into decedent's Trust B and decedent's Trust C.  The trustee is to include in Trust B only assets in an amount up to the maximum marital deduction from federal estate tax, and to allocate the remainder of the marital share to Trust C.

---

[2] The effect of the 2002 amendment is not at issue on appeal.

[3] In our March 2017 unpublished opinion, *Donkin v. Donkin* (Mar. 29, 2017, B266036) (*Donkin II*), we summarized many of the key underlying facts of the dispute between the parties.  We replicate portions of that summary as relevant here.

3

In 2002, Rodney, Sr., died. Under the terms of the trust, this rendered the decedent's trust, both the Trust B and Trust C portions thereof, irrevocable.

The trust further provides that, "upon the death of the surviving spouse [Mary], the trustee shall hold, administer and distribute the trust in the following manner." (Capitalization omitted.) The provisions that immediately follow require the trustee to do various things not relevant to the instant appeal (for example, dispose of personal property and make special distributions under certain circumstances). Then, "[w]hen [these] conditions are satisfied, the debts and obligations of the trust estate have been paid, and any special bequests have been distributed, the trustee shall allocate and divide [the] trust estate as then constituted into separate shares so as to provide one share for each of the designated primary beneficiaries[—as noted, the trustors' children, Rodney, Jr., Lisa, and Annemarie—] living at the death of the surviving [trustor]." (Capitalization omitted.) Finally, the trust requires that "the trustee . . . distribute the shares allocated to primary beneficiaries outright as soon as is practicable." (Capitalization omitted.)

The trust also provides instruction on how the trustee should proceed in the event that a primary beneficiary dies after the trustee has divided the trust estate into shares for each of the primary beneficiaries, but before the trustee has distributed those shares. Namely: "After division into shares . . . upon the death of a primary beneficiary . . . prior to [the] complete distribution of his or her share," the remaining undistributed balance of their share shall be distributed to the deceased primary beneficiary's then-living issue pursuant to an age and percentage formula. (Capitalization omitted.) "If a primary

4

beneficiary has no such issue, the remaining balance of their share shall be distributed to the [trustors'] then living issue." (Capitalization omitted.) Currently, there are six living individuals who are issue of the primary beneficiaries: Matthew Donkin, Kathryn Rose Donkin, Christopher Kenneth Donkin, and Robert Craig Donkin—all of whom are the children of Rodney, Jr.—and Lisa's children: April Kim Cortesi and Laura Kim Shaunessy. Of these six individuals (the secondary beneficiaries), only Matthew is a party to the instant appeal.[4]

In 2004, shortly before her own death, Mary executed an amendment to the trust. The amendment "substituted a new paragraph regarding the allocation of the trust assets after her death as the surviving spouse. Instead of directing an immediate allocation and division of the assets into separate shares for the beneficiaries, the new paragraph grants the successor trustees— . . . initially, . . . Rodney Jr. and Vicki—'complete discretion' after the death of Mary to retain the assets of the family trust intact and to continue to manage the property for the equal benefit of the primary beneficiaries. Among other things, the new paragraph granted the successor trustees 'sole discretion' over distribution of income and principal from the trust to the beneficiaries." (*Donkin II, supra*, B266036, capitalization omitted.) The language in the contested amendment did not differentiate between Trusts A, B, and C. In the unpublished portion of the April 3, 2020 opinion, however, we concluded that this amendment could only apply to the surviving spouse's trust (Trust A), because at the time Mary

---

[4] Christopher signed the notice of appeal as well, but has not made an appearance in the appeal.

5

executed the 2004 amendment, both the Trust B and Trust C portions of the decedent's trust had already become irrevocable. (*Donkin v. Donkin* (Apr. 3, 2020, B293127) (*Donkin III*).) We further concluded that the terms of the trusts required distribution of Trusts B and C to beneficiaries " ' "as soon as is practicable" ' " after Mary's death and did not permit the trustees to continue to administer Trusts B and C as spendthrift trusts for any longer after Mary's death than necessary to address the special scenarios addressed in the trust, calculate the primary beneficiaries' shares, and prepare the trust assets for distribution according to those shares.

In 2005, Mary died, at which point the Trust A portion of the trust became irrevocable as well.

### B. *Prior Litigation and Appeals Regarding No Contest Clause*

The trust contains a no contest clause. The 2004 amendment, which we have concluded applies only to Trust A, also includes a no contest clause. For several years beginning in 2008, Rodney, Jr., and Vicki, as trustees, and the primary beneficiaries besides Rodney, Jr. (Lisa, and Annemarie), litigated the no contest clauses resulting in one California Supreme Court decision, *Donkin v. Donkin* (2013) 58 Cal.4th 412, 416 (*Donkin I*), and multiple Court of Appeal decisions, including *Donkin II* and *Donkin III*. The final reviewing court determined that none of the conduct at issue triggered a no contest clause.

### C.   *Petitions at Issue in Challenged Orders*

The two orders identified in Matthew's notice of appeal[5] are:  (1) An April 13, 2022 order (the Baker property order) granting a May 10, 2021 petition of interim trustee Aileen Federizo[6] requesting instructions to sell a property known as the Baker property (the Baker property petition); and (2) an April 25, 2022 order (the liquidation order) granting Annemarie's May 7, 2019 petition to instruct the interim trustee to terminate and distribute the trust (the liquidation petition).

The proof of service for the liquidation petition reflects that it was served on Matthew by mail in 2019 at the Baker property address.  The proof of service for the Baker property petition reflects that it was served on Matthew by mail in March 2021 at an address in Florida on Belle Grande Avenue (the Belle Grande address).  Per a declaration Matthew would later file with the

---

[5] Matthew's notice is correctly captioned as notice of cross-appeal, given that Rodney, Jr., and Vicki had already appealed the orders Matthew identifies in his notice.  After Rodney, Jr., and Vicki twice failed to file the requisite documents to prosecute their appeal, however, this court dismissed it.  Matthew's cross-appeal is thus the only challenge currently before us.  To avoid confusion, we refer to Matthew's challenge simply as an appeal, rather than a cross-appeal.

[6] Aileen Federizo is a professional fiduciary and not related to the Donkin family.  Because we refer to all other individuals by their first name, however, we refer Aileen in this way as well.  No disrespect is thereby intended.  The court memorialized its appointment of Aileen as interim trustee in a December 13, 2018 order.  We discuss additional details regarding Aileen's appointment below as needed.

7

court, he did not live at either of these addresses at the times the petitions were served.

The record contains proofs of service filed with the court reflecting that in 2021, Matthew was served with notice of the *hearing* on the Baker property petition by mail, as well as a continuance of that hearing, at an address in West Virginia on Craighill Drive (the Craighill address). Per a declaration Matthew would later file with the court, he was living at the Craighill address at the time of these mailings.

### 1. *Objections based on notice to secondary beneficiaries*

Rodney, Jr., and Vicki objected to the liquidation petition based on, inter alia, lack of sufficient notice to the secondary beneficiaries, including Matthew. They did not make this same objection to the Baker property petition. They, however, did object to Annemarie's October 4, 2016 petition involving, inter alia, the sale of the Baker property, based on lack of sufficient notice to the secondary beneficiaries. Rodney, Jr., and Vicki's objections alleged both a failure to even attempt to give notice to some secondary beneficiaries, and the use of inaccurate addresses for sending notices to some secondary beneficiaries, including Matthew. Rodney, Jr., and Vicki filed proofs of service attesting to having mailed copies of their objections in October 2016 and June 2019 to, inter alia, Matthew at the Belle Grande address. Per a declaration Matthew would later file with the court, he was living at the Belle Grande address at both times.

In August 2021 briefing, Rodney, Jr., and Vicki reiterated their objections based on insufficient notice to the secondary beneficiaries.

8

### 2. *Trial and tentative rulings on petitions*

The court heard the liquidation petition, the Baker property petition, and the October 4, 2016 petition involving the Baker property on various days between August 17, 2022 and September 8, 2022. On September 8, 2022, the court issued tentative rulings denying the October 4, 2016 petition, granting the Baker property petition, and partially granting the liquidation petition. The court overruled Rodney, Jr. and Vicki's objections regarding notice to the secondary beneficiaries, but "direct[ed] [counsel] to give notice of the tentative [rulings] to the [primary and secondary beneficiaries]." The court further directed Annemarie, Rodney, Jr., and Lisa "to provide the current or last known addresses of their children to Aileen Federizo by [September 15, 2021]" and set an October 19, 2021 deadline for the secondary beneficiaries to object to the tentative rulings, "otherwise they will be deemed waived and the court will adopt the tentative ruling as its final ruling on [November 19, 2021]." (Capitalization omitted.) Counsel provided notice of the tentative rulings to, inter alia, all secondary beneficiaries, including Matthew. This notice was sent to Matthew at the Craighill address. Per a declaration Matthew would later file with the court, he was living at the Craighill address at the time this notice was sent.

### 3. *Secondary beneficiary objections to the tentative rulings and court's final orders*

Four of the six secondary beneficiaries—Matthew, Christopher, Robert, and Kathryn—filed a joint set of objections to the court's rulings based entirely on the lack of effective notice to all secondary beneficiaries. They also requested a written statement of decision. The objections were signed

9

by and supported by Matthew's and Christopher's declarations. Matthew's declaration states that he lived at the Belle Grande address "[f]rom 2015 to 2019."  He also identifies his "current[ ]" address—that is, his address as of October 2021 when he executed the declaration—as the Craighill Drive address, and further states that he had not lived at the Baker property since 2010.

On January 21, 2022, the court held a hearing at which it considered these objections to the tentative rulings.  Matthew and Christopher appeared at this hearing.  The court overruled all objections on the basis that notice to the secondary beneficiaries was not required by statute, and thus any failure to provide sufficient notice of the petitions to them was not a basis for changing the court's tentative rulings.  The court explained that it had "ordered that notice be given [to the secondary beneficiaries] in an abundance of caution, so everybody was clear what was going to be happening with these properties."  The court declined to provide a written statement of decision and adopted its September 8, 2021 tentative rulings as final.  These rulings were ultimately memorialized in orders dated April 13, 2022 and April 25, 2022, respectively.

Matthew timely appealed, identifying the April 13, 2022 and April 25, 2022 orders as the subjects of his appeal.

## DISCUSSION

### A.    *Notice to Secondary Beneficiaries*

Matthew contends that, based on his and the other secondary beneficiaries' contingent interests in the trust—that is, their entitlement to receive the shares of Trusts B and C allocated to their respective parents if such parents die after the

trustee divides the trust assets into shares, but before the trustee distributes those shares—he and all other secondary beneficiaries were entitled to notice in the trust proceedings. He contends that he and the other secondary beneficiaries did not receive the required notice regarding the liquidation petition, Baker property petition, and related hearings, and that, as a result, the Baker property order and the liquidation order are void. We disagree with Matthew that his status as a secondary beneficiary entitled him to notice either under the applicable statutes or as a matter of due process.

### 1. *Statutory notice requirements*

In arguing he is entitled to notice, Matthew relies on Probate Code section 17203,[7] which describes the service required for petitions initiating probate proceedings, in relevant part, as follows: "At least 30 days before the time set for the hearing on the petition, the petitioner shall cause notice of hearing to be delivered pursuant to Section 1215 to all of the following persons: [¶] . . . [¶] (2) All beneficiaries, subject to Chapter 2 (commencing with Section 15800) of Part 3." (§ 17203, subd. (a) & (a)(2).) The notice requirement is thus qualified by the provisions of "Chapter 2," among them section 15804. Section 15804 provides, in relevant part, that "it is sufficient compliance with a requirement in this division that notice be given to a beneficiary, or to a person interested in the trust, if notice is given as follows: [¶] . . . [¶] . . . Where an interest has been limited to a living person and the same interest, or a share therein, has been further limited upon the

---

[7] Unless otherwise indicated, all statutory references are to the Probate Code.

happening of a future event to the surviving spouse or to persons who are or may be the distributees, heirs, issue, or other kindred of the living person, notice shall be given to the living person." (§ 15804, subd. (a) & (a)(2).) This section applies to the trust provisions governing when and how the secondary beneficiaries may be entitled to distributions directly from the trust. Namely, the trust requires the distribution of its assets in Trusts B and C, in equal shares, to each of the primary beneficiaries if they are "living person[s]." If at the time of distribution, all primary beneficiaries are "living person[s,]" the secondary beneficiaries are entitled to nothing. But "upon the happening of a future event to . . . persons who are . . . the distributees"— here, upon the death of any of the primary beneficiaries after division of the trust assets into shares, but prior to distribution of those shares—the "same interest" that would have otherwise been granted to the deceased primary beneficiary is either granted to the issue of the deceased primary beneficiary (i.e., one or more secondary beneficiaries) or is reallocated between the shares of the living primary beneficiaries. Because section 15804 applies to Matthew's interest in the trust as a secondary beneficiary, and because all primary beneficiaries are alive, the only notice section 17203 and section 15804 require is notice to the primary beneficiaries—the "living person[s]" referenced in section 15804. Matthew's status as a secondary beneficiary thus does not statutorily entitle him to notice.

### 2. *Due process notice requirements*

Matthew also argues that because "[t]he law has long recognized that a contingent future interest is property [citation] no matter how improbable the contingency" (*In re Marriage of Brown* (1976) 15 Cal.3d 838, 846, fn. 8), he, as a secondary

12

beneficiary, has a property interest in the trust triggering certain due process procedural protections. (*Roth v. Jelley* (2020) 45 Cal.App.5th 655, 669–670 (*Roth*) [interests " 'subject to complete divestment' " are still property interests that may trigger due process right to notice].) Specifically, he argues that due process required he receive notice of the Baker property petition and liquidation petition, even if the code did not require notice, based on the potential effect of these petitions on his interest as a secondary beneficiary. (See *id.* at p. 674 [under *Mullane v. Central Hanover Bank & Trust Co. (*1950) 339 U.S. 306, 319 (*Mullane*), "meeting a state's statutory notice requirements does not automatically satisfy federal due process"].) According to Matthew, because he did not receive such notice, the orders on these petitions are void.

Due process requires " 'notice reasonably calculated to apprise interested parties of the pendency of the action affecting their property interest and an opportunity to present their objections. [Citation.]' " (*Ryan v. California Interscholastic Federation-San Diego Section* (2001) 94 Cal.App.4th 1048, 1072 (*Ryan*).) Thus, "[i]f a proceeding will 'adversely affect' a person's property interest, due process requires that the person be given notice by mail of the proceeding and an opportunity to be heard when the person's name and address are reasonably ascertainable." (*Roth, supra,* 45 Cal.App.5th at p. 670, quoting *Mennonite Bd. of Missions v. Adams* (1983) 462 U.S. 791, 800.) These concepts apply with equal force in the probate context. In "a proceeding to determine the rights of beneficiaries under a trust . . . when the rights of beneficiaries to a trust are inevitably affected, they are entitled to notice." (*Estate of Reed* (1968) 259 Cal.App.2d 14, 21 (*Reed*).)

But what it means to "adversely affect" or "inevitably affect" a property interest depends on the context of the specific proceedings and the specific interest at issue. Due process, " ' "unlike some legal rules, is not a technical conception with a fixed content unrelated to time, place and circumstances." ' " (*Barclay Hollander Corp. v. California Regional Water Quality Control Bd.* (2019) 38 Cal.App.5th 479, 510.) It "is a flexible concept, as the characteristic of elasticity is required in order to tailor the process to the particular need." (*Ryan, supra*, 94 Cal.App.4th at p. 1072, citing *People v. Hansel* (1992) 1 Cal.4th 1211, 1219.)

Here, the petitions could not and did not adversely affect Matthew's interest in the trust in the manner necessary to trigger due process notice obligations. Regardless of how the court ruled on the petitions, Matthew's rights under the trust would remain (and, indeed, have remained) unchanged: If certain circumstances outlined in the trust come to pass, Matthew will be entitled to distribution per those trust provisions. The challenged orders granting the petitions do not alter how those provisions are applied or what they require. Matthew's "right[ ] [as a] [secondary] beneficiar[y] under [the] trust" is thus not "inevitably affected" by the petitions (*Reed*, supra, 259 Cal.App.2d at p. 21)—to the contrary, that right is not affected at all.

Of course, the petitions might change the amount or value of *what Matthew stands to collect*, should the circumstances come to pass that trigger his right to collect directly from the trust, because the relief the petitions seek may reduce the value of the trust corpus. But this is an insufficient adverse effect to justify

14

requiring notice to Matthew as an element of due process.[8]  Were such notice required, any contingent trust beneficiary, regardless of how remote the likelihood that he or she will ever collect anything from the trust, could require notice of even the most mundane of housekeeping tasks, citing as a basis a possible reduction in the value of the trust corpus.  Such " '[a] construction of the Due Process Clause which would place impossible or impractical obstacles in the way [cannot] be justified.' " (*Noel v. Thrifty Payless, Inc.* (2019) 7 Cal.5th 955, 981; see *ibid.* [describing courts' "nuanced and pragmatic approach" to assessing the requirements of due process]; see also *Mullane, supra*, 339 U.S. at pp. 314–315 [noting significance of "the practicalities and peculiarities of the case" in assessing the notice due process requires and that " '[t]he criterion is not the possibility of conceivable injury but the just and reasonable character of the requirements [of the notice statute], having reference to the subject with which the statute deals' "].)

The primary due process cases on which Matthew relies in arguing to the contrary—*Roth, supra*, 45 Cal.App.5th 655, *Reed, supra*, 259 Cal.App.2d 14, and *Estate of Sigourney* (2001) 93 Cal.App.4th 593 (*Sigourney*)—are distinguishable.  These cases involve a failure to give notice to the appellant of a probate court order that effectively *changed or eliminated* the terms of a will or trust governing the appellant's contingent interest in the trust.  Such orders plainly "adversely affected" these appellants' respective interests in the trusts at issue, because the interests ceased to exist in the wake of the orders.  This is in stark contrast to the challenged orders here, which have no effect on Matthew's

---

[8] To the extent *Estate of Lacy* (1975) 54 Cal.App.3d 172 is inconsistent with this conclusion, we disagree with its holding.

15

right to collect from the trust (even though they may indirectly affect the amount he stands to collect).

In *Roth*, the appellant was the grandson of the trustor, McKie Roth, Sr. (McKie, Sr.). (*Roth, supra*, 45 Cal.App.5th at p. 659.) McKie, Sr., "created [the] trust in his will for the benefit of his wife Yvonne Roth (Yvonne) during her life and granted her a testamentary power of appointment over the remainder. The will provided a default distribution scheme in case Yvonne did not exercise her appointment power, under which McKie, Sr.'s three adult children from a prior marriage"—one of whom was the appellant's parent—"and Yvonne's one adult son from a prior marriage would each take a one-quarter share of the remainder of the trust, with the proviso that, if an adult child did not survive Yvonne, then that child's surviving issue would take that child's share . . . . Thus, under the will, the issue of each of the four adult children"—which included the appellant grandson—"had a contingent remainder interest in the trust, subject to divestment by Yvonne's exercise of her appointment power." (*Ibid*.) In the 1991 decree that was the subject of the appeal, the trial court "included language changing the default distribution of the trust upon Yvonne's death, . . . specif[ying] that the remainder of the trust was to be distributed solely to Yvonne's son or his surviving issue in case of default (i.e., failure of Yvonne to exercise her testamentary power of appointment)."[9] (*Id.* at

---

[9] The court revised the trust provisions in this manner consistent with a settlement agreement, to which appellant was not a party and of which appellant did not receive notice, in which McKie, Sr.'s, children (including appellant's parent) disclaimed any right to collect distributions from the trust under its original terms. (*Roth, supra*, 45 Cal.App.5th at p. 659.)

pp. 659–660.) McKie, Sr.'s grandchildren, including appellant, "were not given prior notice of the 1991 decree, even though the decree *eliminated* their contingent interests in the remainder of the trust." (*Id.* at p. 660.)

Thus, in *Roth*, the challenged 1991 decree "adversely affected [the appellant's] property interest . . . [because] under the . . . will, [appellant] had a contingent future remainder interest in the trust, but under the 1991 decree, he had no property interest in the trust." (*Roth, supra*, 45 Cal.App.5th at p. 670, capitalization omitted.) Under the terms of the original trust in *Roth*, the appellant was a contingent remainderman, even though he may or may not have received any actual money or property as a result of this interest. Under the trust as revised by the challenged decree, however, he was no longer a contingent remainderman and under no circumstances would receive any property from the trust. On these facts, "due process required that [the appellant] be given notice of the proceeding that resulted in the 1991 decree and an opportunity to object. Because [the appellant] was not given such notice, the 1991 decree [was] void." (*Roth, supra*, 45 Cal.App.5th at p. 660, capitalization omitted.)

In *Reed, supra,* 259 Cal.App.2d 14, the son of the trustor of a testamentary trust had a power of appointment over the corpus of the trust estate. (*Id.* at p. 23.) Through his (the son's) will, the son "disposed of his entire estate, devising one-third of the remainder of the [trust] corpus to each of [three] named charities." (*Ibid.*) *Reed* held that the charities were entitled to notice of proceedings assessing whether the son's disposition of his share of the trust constituted an effective exercise of the son's power of appointment, because if the court concluded that it did

17

not, the charities would lose any interest in the trust corpus they would otherwise have under the terms of the son's will. (*Id.* at pp. 19–22.) An order to this effect resulting from proceedings of which the charities did not receive notice was thus void for lack of due process. (*Id.* at pp. 19 & 23.)

And in *Sigourney, supra*, 93 Cal.App.4th 593, "the court held that where a will gave an organization authority to select future trustees of a testamentary charitable trust, that organization had a property interest in the selection power created by the will, and the executor could not simply eliminate the organization's interest in the charitable trust under the guise of construing the will without providing notice to the organization and [an] opportunity to be heard." (*Roth, supra*, 45 Cal.App.5th at p. 675.) At issue in *Sigourney* was a "petition 'to construe, amend, and conform [the] will and . . . trust' " (*Sigourney, supra*, at p. 596) so that the organization would no longer have ultimate authority to select the successor trustees. (See *id.* at pp. 596–597.) *Sigourney* held that an order granting this petition and amending the terms of the charitable trust was "void because the [organization] was not given notice of the proceeding." (*Roth, supra*, 45 Cal.App.5th at p. 674 [summarizing *Sigourney*].)

In conclusion, due process did not entitle Matthew to receive notice of the Baker property petition or liquidation petition. The orders are thus not void on this basis.

In analyzing Matthew's argument that he, as a secondary beneficiary, was entitled to notice of the petitions at issue, we have necessarily resolved the issue of whether *the other* secondary beneficiaries are entitled to notice of the petition. It is therefore moot whether Matthew has standing to challenge

18

the lack of notice to other secondary beneficiaries. We thus need not address the standing issue.

### B. *No Contest Clause*

Matthew also argues that, based on Annemarie and Lisa's role as the original petitioners prosecuting the liquidation petition, the no contest clause in the trust and/or the no contest clause in the 2004 amendment required Annemarie and Lisa to forfeit any interest they had in the trust. Rodney, Jr., and Vicki argued below that the liquidation petition constituted a contest. Matthew contends that because the liquidation order partially granted the petition without consequence for Annemarie and Lisa, it reflects the court's implicit ruling that the petition was *not* a contest. He argues this ruling was in error and is reviewable in an appeal from the liquidation order. Based on this purportedly erroneous ruling, Matthew asks this court to "[d]irect the probate court to enforce the no contest clauses . . . and enter an order that all asset distributions allocated to the shares of challenging beneficiaries Annemarie . . . and Lisa . . . shall be retained in trust and distributed to the remaining beneficiaries herein named, as if said challenging beneficiary and his or her issue had predeceased the distribution of the trust estate."

Matthew failed to raise this argument in his objections to the court's tentative ruling granting the liquidation petition, as well as at the January 2022 hearing, in which he personally participated. During that hearing, the court specifically asked Matthew whether he "want[ed] to put anything else on the record with regard to [his] objection" beyond his notice-based objections, and Matthew responded, "No, that would be my objection." Having failed to raise this issue below, despite having been invited by the court to do so twice, Matthew has forfeited the

19

right to raise it now.[10]  (See *Doers v. Golden Gate Bridge etc. Dist.*
(1979) 23 Cal.3d 180, 184–185, fn. 1 [" '[a]n appellate court will
ordinarily not consider procedural defects or erroneous rulings,
in connection with relief sought or defenses asserted, where
an objection could have been but was not presented to the lower
court by some appropriate method' "].)

### C.    *Aileen's Appointment as Interim Trustee*

Matthew also challenges the December 13, 2018 order
appointing Aileen as interim trustee (the appointment order),
arguing, inter alia, that it is void for lack of service to any
parties (not just the secondary beneficiaries).  He notes that
the formal request to appoint Aileen as interim trustee came
through Annemarie's October 4, 2016 petition (originally
regarding matters unrelated to Aileen's appointment), which
on October 16, 2018, the court and parties deemed amended
to include the relevant appointment request.  Matthew argues
that this petition was never served on anyone, and thus the court
lacked jurisdiction to grant the request for appointment it was
deemed to contain, rendering the appointment order void.  (See
*Hearn v. Howard* (2009) 177 Cal.App.4th 1193, 1200 [a judgment
or order may be "void, as a matter of law, due to improper
service"].)

---

**10** Matthew suggests that the court's refusal to provide him
the requested statement of decision somehow prevented him from
raising this issue below.  But the argument he has forfeited—that
a petition requesting immediate liquidation of the trust assets
triggers the no contest clause—is based on an aspect of the
petition that is evident in the petition's very title.  Matthew thus
cannot attribute his failure to object on this basis to a lack of a
statement of decision.

20

### 1.    *Threshold appealability issues*

The July 2022 notice of appeal is untimely as it applies to the December 2018 appointment order.  Because a void order may be collaterally attacked at any time, however, including for the first time on appeal (see *People v. Safety National Casualty Corp.* (2007) 150 Cal.App.4th 11, 17), to the extent Matthew's appeal challenges the appointment order as void, we may entertain it.  But we may not and do not address Matthew's additional arguments challenging the appointment order on the other bases Matthew raises.  To the extent his appeal from the appointment order relies on these additional arguments, it is time-barred.

### 2.    *The appointment order is not void*

As the sole basis for his contention that the petition ultimately resulting in the appointment order was not served (and that the appointment order is therefore void), Matthew cites the lack of a signature on the proof of service for the October 4, 2016 petition and a declaration of Annemarie's counsel stating, inter alia, that such counsel had no direct recollection of serving anyone with that petition.  This declaration further states, however, that based on decades of custom and practice and proofs of service his office filed, counsel had caused all primary beneficiaries to be served with the October 4, 2016 petition.  In considering such arguments based on disputed evidence of service, "we defer to factual findings on disputed evidence so long as those findings are supported by substantial evidence." (*First American Title Ins. Co. v. Banerjee* (2022) 87 Cal.App.5th 37, 42 [discussing service of summons and complaint in context of motion to vacate purportedly void judgment for lack of service].)  Here, the court found that notice of the October 4, 2016 petition

was proper.  Substantial evidence in the record supports this finding:  namely, the declaration of counsel.  (*Giorgio v. Synergy Management Group, LLC* (2014) 231 Cal.App.4th 241, 247 ["[w]hether the evidence is oral testimony, affidavits, or documents, when there is conflicting evidence, the trial court's express and implied factual determinations are not disturbed on appeal if supported by substantial evidence"].)  Moreover, because the agreement to amend the petition to include the appointment request was made in open court with the agreement of all primary beneficiaries, all those entitled to receive notice of the petition's appointment request (see Discussion *ante*, part A) received actual notice thereof at that hearing.

Accordingly, the record does not support Matthew's argument that the appointment order is void for lack of notice or proper service.

## DISPOSITION

The orders are affirmed.  Respondents are awarded their costs on appeal.

NOT TO BE PUBLISHED.


ROTHSCHILD, P. J.

We concur:


BENDIX, J.


WEINGART, J.